# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

GILBERT LEE POOLE, JR.,

        Defendant-Appellant.

FOR PUBLICATION
July 7, 2015
9:00 a.m.

No. 315982
Oakland Circuit Court
LC No. 1989-090203-FC

ON REMAND

Before: MURPHY, P.J., and SAWYER, J., and TALBOT, C.J.

MURPHY, P.J.

Defendant petitioned the trial court under MCL 770.16 for an order directing DNA testing of biological material obtained by the police in their investigation of a 1988 murder for which defendant was convicted. The trial court denied the petition, concluding that simple blood-type evidence presented to the jury at defendant's criminal trial in 1989 had already excluded defendant as the source of collected blood samples, with one sample even producing a blood-type result unlinked to either defendant or the victim, yet defendant was still convicted by the jury. Therefore, according to the trial court, DNA testing would add nothing new for purposes of a retrial and simply confirm that defendant's blood was not present at the crime scene. We affirmed the trial court's decision, not on the merits, but on the basis of the law of the case doctrine in light of the case's procedural history in which prior comparable claims raised by defendant had been rejected in orders issued by this Court and the Michigan Supreme Court. Our Supreme Court then reversed our holding in an order, ruling that the law of the case doctrine did not apply, given that the previous appellate orders did not constitute decisions on the merits. *People v Poole*, __ Mich __; 862 NW2d 652 (2015). The Supreme Court remanded the case to us for consideration of issues raised by defendant that were not addressed in our original opinion. We now reverse the trial court's ruling and remand for DNA testing.

The extensive history of this case was set forth in our prior opinion and, for ease of reference, we now quote that background here:

Defendant was convicted of first-degree murder, MCL 750.316, in 1989 with respect to the slaying of Robert Mejia, whose body was found in a field in Pontiac on June 7, 1988. There was blood covering Mejia's shirt and pants. An

-1-

autopsy revealed that he sustained eight stab wounds to the face, neck, and upper chest area. The depth of the wounds ranged from one-half inch to four inches. Mejia also sustained multiple superficial cuts and incised wounds, and he had abrasions and contusions on his arms and back, indicating that there had been a struggle. There was also a bite mark to his right arm. The coroner opined that Mejia had died approximately 48 hours before his body was discovered, plus or minus 12 hours.

Witnesses identified defendant as leaving a bar with Mejia on the night of June 5, 1988. The case went unsolved for five months until defendant's then-girlfriend reported to authorities that he had confessed the killing to her. According to the girlfriend, on a Sunday evening in early June 1988, she and defendant had a fight about money, after which defendant said he was "going out to get some money" and then left. Defendant did not return until between 1:00 and 4:00 a.m. At that time, she noticed that defendant was "all scratched up and red in the face." When his girlfriend asked defendant what happened, he told her that he had been in a fight. At some point, defendant randomly stated to his girlfriend, "I killed somebody." He then explained that he had gone to the bar where witnesses had placed defendant and Mejia together. Defendant told his girlfriend that he talked with "a guy" in the bar and eventually left with him. According to the girlfriend, defendant recounted how he and the man went for a walk in the woods, where defendant "pulled a knife on the guy and told him to give him all of his money." A fight ensued "with a lot of biting and scratching, and pulling of hair." The girlfriend testified that defendant informed her that he then "held [the other man] down with his left hand and slit his throat and watched him drown in his own blood." Defendant's girlfriend did not initially believe defendant, but he "proved it" to her by retrieving a watch from his vehicle that was covered in dried blood.

At trial, Melinda Jackson, an expert in forensic serology, testified that blood found on Mejia's clothing was type O, which matched Mejia's blood type. There was also evidence that some blood found on stones and grass connected to the crime scene was type O blood. Further, there was testimony presented at trial reflecting that defendant's blood type was AB, a type shared with only three percent of the population, and that none of the testable blood samples collected in relationship to the offense matched defendant's blood type. Additionally, a stone found in Mejia's pants had type A blood on it, which blood type matched neither Mejia nor defendant's blood.

Defendant appealed the conviction as of right, and this Court affirmed. *People v Poole*, unpublished opinion per curiam of the Court of Appeals, issued January 21, 1993 (Docket No. 120955). Our Supreme Court thereafter denied defendant's application for leave to appeal. *People v Poole*, 442 Mich 933 (1993).

On November 21, 2005, defendant filed a motion for new trial in the circuit court, relying, in part, on MCL 770.16. He also filed an accompanying motion for DNA testing pursuant to MCL 770.16. In the motions, defendant

requested the DNA testing of biological material. The appeal currently before the panel also concerns DNA testing under MCL 770.16, which provided back in 2005 and still provides today that "a defendant convicted of a felony at trial before January 8, 2001 who is serving a prison sentence for the felony conviction may petition the circuit court to order DNA testing of biological material identified during the investigation leading to his or her conviction[.]" MCL 770.16(1); 2005 PA 4; 2008 PA 410; 2011 PA 212.

In response to the 2005 motions filed by defendant in the circuit court, the prosecutor argued that the request for DNA testing did not satisfy the statutory requirements of MCL 770.16. MCL 770.16(3)(a) required a defendant to "[p]resent[] prima facie proof that the evidence sought to be tested is material to the issue of the convicted person's identity as the perpetrator of, or accomplice to, the crime that resulted in the conviction." The language today is identical, except that it is found instead in MCL 770.16(4)(a) as a result of an amendment enacted pursuant to 2008 PA 410. MCL 770.16(3)(b)(*i*) provided that a defendant also had to establish, by clear and convincing evidence, that a "sample of identified biological material . . . is available for testing." The identical language is currently found in MCL 770.16(4)(b)(*i*). See 2008 PA 410. The prosecutor argued that defendant failed to establish that biological material was available for testing and that, even if available, defendant could not show that such evidence was material to defendant's identity as the perpetrator, as the blood-typing evidence presented at trial already established that defendant's blood was not found in connection with the criminal investigation. In a supplement to the prosecutor's response brief to defendant's 2005 motions, the prosecution stated that it had now been "informed by Ms. Melinda Jackson of the Michigan State Police that some blood sample evidence involved in the Defendant's case has been preserved. The People instructed Ms. Jackson to continue to preserve those samples." The prosecution, however, still maintained that defendant was not entitled to relief under MCL 770.16.

On August 1, 2006, the circuit court, the Honorable Edward Sosnick presiding, treated defendant's motions as motions brought under MCR 6.501 *et seq.* (post-appeal relief), denied defendant's DNA-related requests, and found that defendant failed to establish that biological material was available for testing. Moreover, the circuit court ruled:

> Even if the defendant established that such biological material existed, the defendant could not meet the requirements of MCL 770.16(3)(a) [now § 16(4)(a)] that such evidence was material to the defendant's identity as the perpetrator of the murder of Robert Mejia. Evidence presented during this defendant's trial already established that the defendant's blood [type] was not found on the victim. There is no other suspect to attempt to match with DNA testing. The defendant has not, therefore, satisfied the requirements of MCL 770.16(3).

Defendant then filed with this Court in Docket No. 276973 a delayed application for leave to appeal, along with an accompanying motion to remand for DNA testing pursuant to MCL 770.16. In the application, defendant argued that, as acknowledged by the prosecutor below, biological material was available for DNA testing. Defendant also argued to this Court that, pursuant to MCL 770.16, he was entitled to DNA testing of all biological evidence presented at the trial, given that DNA testing could significantly undermine the prosecutor's theory relative to defendant's guilt. In the motion to remand for DNA testing, defendant referenced the following evidence collected by police: blood on the victim's fingernails; blood from a sample of the shirt worn by the victim; blood on a stone recovered from the victim's clothing; loose hair found on the victim; and blood on the console of defendant's car. The motion stated, "The Cooley Law School has discovered that there is DNA biological material available for testing. Exhibit G."

This Court denied defendant's delayed application "for failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v Poole*, unpublished order of the Court of Appeals, entered October 23, 2007 (Docket No. 276973). In that same order, the panel denied defendant's motion to remand for DNA testing. *Id.* The Michigan Supreme Court then denied defendant's application for leave to appeal, ruling that "defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v Poole*, 480 Mich 1186 (2008). The Court also denied the motion for DNA testing. *Id.* On July 10, 2008, defendant filed a petition for a writ of *habeas corpus* in federal court, seeking in part DNA testing pursuant to 18 USC 3600. The petition was denied. *Poole v Woods*, unreported opinion of the United States District Court for the Eastern District of Michigan, issued September 28, 2011 (Docket No. 08-12955). The case was then unsuccessfully appealed to the Sixth Circuit and eventually to the United States Supreme Court, which denied certiorari. *Poole v Mackie*, __ US __; 134 S Ct 945; 187 L Ed 2d 811 (2014).

While the federal effort was pending in the Sixth Circuit, defendant, on November 2, 2012, filed the instant petition in the circuit court, seeking an order, once again, to test for biological evidence pursuant to MCL 770.16. In the petition, defendant stated that the police had confirmed that they held "bloody stones and known samples from the victim and [defendant]." We note that documents in the record dating back to 1988 reflected that stones bearing suspected blood had been collected from the crime scene. Defendant asserted that while the stones and other samples were subjected to blood-type testing, they had not been subjected to DNA testing. Defendant also maintained that the evidence was material to establishing the identity of the perpetrator. Further, defendant requested DNA testing of other biological evidence previously collected by police. There is no indication that the facts had changed or that any new evidence had been located or discovered since the earlier failed attempt to obtain an order for DNA testing. The circuit court, the Honorable Rae Lee Chabot presiding, rejected the petition, finding, much like Judge Sosnick had several years earlier, that the jury had been fully aware that defendant was not the source of any crime-scene blood, given the blood-type evidence, yet the jury still convicted defendant.

-4-

DNA testing excluding defendant as a donor would therefore add nothing of relevance if a new trial took place. This Court then granted defendant's application for leave to appeal. *People v Poole*, unpublished order of the Court of Appeals, entered November 25, 2013 (Docket No. 315982). [*Poole*, unpub op at 1-4.]

We proceeded to hold that the law of the case doctrine precluded consideration of defendant's latest efforts under MCL 770.16. *Id.* at 4-5. However, our Supreme Court concluded that the earlier orders issued by this Court and the Supreme Court, which provided that defendant had failed "to meet the burden of establishing entitlement to relief," and which denied his request for any DNA testing, did not constitute "law of the case," because the orders "were not rulings on the merits of the issues presented." *Poole*, 862 NW2d at 652.

Given the Supreme Court's directives in the remand order that "no provision set forth in MCL 770.16 prohibits the issuance of an order granting DNA testing of previously tested biological material" and that we are to address "the issues raised by the defendant," *id.* at 652-653, we will set aside our *sua sponte* concerns that, perhaps, MCL 770.16 does not allow for multiple petitions regarding the same evidence or that the court rules regarding motions under Subchapter 6.500 (post-appeal relief) might be applicable and bar relief. See MCL 770.16(8) (referencing MCR 6.505); MCR 6.501 ("Unless otherwise specified by these rules, a judgment of conviction and sentence entered by the circuit court not subject to appellate review under subchapters 7.200 or 7.300 may be reviewed only in accordance with the provisions of this subchapter."); MCR 6.502(G)(1) and (2) (only one motion for relief from judgment may be filed except for situations involving certain retroactive changes in the law or newly-discovered evidence); MCR 6.508(D)(2) (court generally cannot grant relief if the defendant's motion alleges grounds that were previously rejected in an MCR 6.500 proceeding).[1]

Turning to the substance or merits of defendant's petition under MCL 770.16, we conclude: (1) that, in satisfaction of § 16(1), defendant was convicted of a felony at trial before January 8, 2001, and is currently serving a prison sentence for the conviction; (2) that, in satisfaction of § 16(2), defendant's petition was filed in the sentencing court before January 1, 2016; (3) that, in satisfaction of § 16(3), biological material was collected and identified during the police investigation of defendant's case; (4) that, in satisfaction of § 16(4)(a), defendant presented prima facie proof that the biological evidence sought to be tested was material to the question of defendant's identity as the perpetrator of the murder; (5) that, in satisfaction of § 16(4)(b)(*i*), there is clear and convincing evidence that a sample of biological material is indeed available for DNA testing; (6) that, in satisfaction of § 16(4)(b)(*ii*), there is clear and convincing evidence that the biological material was not previously subjected to DNA testing; and (7) that, in satisfaction of § 16(4)(b)(*iii*), there is clear and convincing evidence that defendant's identity as the perpetrator was at issue during his trial. When all of the factors

---

[1] As reflected above in the quoted language from our previous opinion, defendant's earlier efforts to obtain DNA testing of the same biological material under MCL 770.16 were addressed by the trial court, this Court, and our Supreme Court in the context of Subchapter 6.500.

recited above are satisfied, as we have concluded, "[t]he court *shall* order DNA testing[.]" MCL 770.16(4) (emphasis added). Of the factors subject to consideration, the only point of contention below and on appeal concerns § 16(4)(a) and whether the blood samples sought to be tested are material to the issue of defendant's identity as the perpetrator of Mr. Mejia's murder.[2]

In *People v Barrera*, 278 Mich App 730, 737; 752 NW2d 485 (2008), this Court construed the language in § 16(4)(a), which at that time was found in § 16(3)(a),[3] holding that biological evidence "must be of some consequence to the issue of identity" or, stated differently, that there must be "some logical relationship between the evidence sought to be tested and the issue of identity." According to the *Barrera* panel, the language in § 16(4)(a) "requires a defendant to link DNA evidence sought to be tested to both the crime and the criminal in order to show materiality[.]" *Id.* at 740.

Here, at issue is blood found on stones and grass located at the crime scene.[4] With respect to blood typing, all that is known is that nearly all of the blood was consistent with the victim's blood type, none of the blood matched defendant's blood type, and that one blood sample – a blood stain on a stone found in the victim's pants – matched neither defendant nor the victim's blood type.[5] If one removes from consideration or the equation the fact that blood-type testing was performed on the evidence and that the results were submitted to the jury, there would appear to be no dispute whatsoever that the blood samples would be material to defendant's identity as the perpetrator. The "materiality" would be established from the evidence showing a violent physical attack involving a knife and an ensuing struggle that could have easily resulted in the perpetrator being cut or scratched, thereby spilling some of the perpetrator's own blood in the process of the killing.[6] A finding of "materiality" would further

---

[2] Section 16(4)(a) requires a defendant to "[p]resent[] prima facie proof that the evidence sought to be tested is material to the issue of the convicted person's identity as the perpetrator of, or accomplice to, the crime that resulted in the conviction."

[3] See 2000 PA 402, 2005 PA 4, and 2008 PA 410.

[4] We note that defendant had also requested an order directing authorities to search for and collect other evidence containing or possibly containing biological material that could be subjected to DNA testing, e.g., a cigarette butt, the victim's fingernail clippings, a blood-stained car console. This issue formed the basis of defendant's second argument on appeal; however, after the appeal was filed the parties entered into a stipulation "that there is no additional biological evidence to be located in this case and that the second issue . . . is moot." Accordingly, our focus is solely on the blood samples found on the stones and grass at the crime scene.

[5] Expert Melinda Jackson did testify that there were inconclusive results in regard to some of the blood samples because they did not contain sufficient quantities of material for testing.

[6] There was evidence that the victim had sustained multiple superficial cuts and incised wounds, along with abrasions and contusions on his arms and back, as well as a bite mark to the back of his right arm, which all suggested that the victim and the perpetrator had engaged in a violent physical struggle before the victim was finally incapacitated and died.

be supported by the evidence showing the nature, location, and extent of the victim's injuries and that the blood samples were found all about the crime scene and in the victim's pocket.

Under our scenario,[7] DNA testing could be inconclusive, could point to defendant as being a donor, or could exclude defendant as the source of any blood samples, along with potentially identifying another specific individual as the donor, thereby clearly satisfying MCL 770.16(4)(a). Because DNA testing of a blood sample could possibly connect another person to the crime scene or exclude defendant, the sample would be of some consequence or have a logical relationship to the issue of identity and would be linked to both the crime and the criminal. In other words, the blood samples would necessarily be material to defendant's identity as the perpetrator.

The difficulty that arises in this case concerns whether the question of materiality under § 16(4)(a) is impacted by the fact that a trial was conducted in which the jury was presented with blood-type evidence that effectively excluded defendant as the source of the blood samples. The prosecution argues that the crime-scene blood samples, for purposes of DNA testing, are not material to the issue of defendant's identity as the perpetrator, considering that blood typing already excluded defendant as the donor of the blood samples. Similarly, the trial court noted that the jury had been fully aware that defendant was not the source of any of the blood, with one sample even producing a blood-type result unlinked to either defendant or the victim, yet the jury still convicted defendant. The court therefore opined that any DNA testing that excluded defendant as a donor would add nothing of relevance in a new trial.

Considering that the trial court was a bit vague in its statements, we are not quite certain regarding the court's underlying reasoning within the context of § 16. On one hand, the trial court may have been concluding that, in regard to the analysis under § 16(4)(a), any "materiality" of the blood samples at this stage had been entirely undercut or lost in light of the history of the case and the prior presentation of blood-type evidence to the jury. Stated otherwise, perhaps the trial court found that the blood samples, for purposes of DNA testing, are immaterial under § 16(4)(a), considering the blood-type evidence submitted at trial that already excluded defendant. On the other hand, or in conjunction with the preceding observation, the trial court may have jumped ahead in the analysis under MCL 770.16(7) and (8), as we shall now explain. If a trial court orders DNA testing, MCL 770.16(7) and (8) contemplate two broad possible results. When "the results of the DNA testing are inconclusive or show that the defendant is the source of the identified biological material," the trial court is required to "deny the motion for new trial." MCL 770.16(7). MCL 770.16(8) controls when "the results of the DNA testing show that the defendant is not the source of the identified biological material[.]" Absent a mistake with respect to the blood typing, any DNA testing done in this case should result in the application of subsection (8). But subsection (8), even when implicated, only allows for a new trial upon a hearing and the presentation of clear and convincing evidence showing that only the perpetrator could have been the source of the identified biological material, showing

---

[7] Again, for the moment, we are assuming that there was no blood-type testing performed or blood-type results presented to the jury.

that the biological material was not contaminated or seriously degraded, and showing "[t]hat the defendant's purported exclusion . . . , balanced against the other evidence in the case, is sufficient to justify the grant of a new trial." MCL 770.16(8)(a)-(c). The trial court's ruling here may have simply reflected its conclusion that, assuming the expected exclusion of defendant as a donor upon any DNA testing, no new trial would be warranted or justified, because defendant already had a trial in which the jury knew that defendant had been excluded.

To the extent that the trial court took the latter approach, jumping ahead and contemplating § 16(7) and (8), this was error. MCL 770.16 envisions two main phases; the first phase involves the court assessing whether DNA testing should be ordered, and the second phase entails, if DNA testing was ordered, whether a motion for new trial should be granted. Here, we are solely concerned with the first phase. As indicated earlier, if a defendant satisfies the required factors with respect to the question whether DNA testing should be ordered, "[t]he court *shall* order DNA testing[.]" MCL 770.16(4) (emphasis added). Accordingly, it would be improper to deny DNA testing on the basis that a court concludes that it would deny a future motion for new trial regardless of the results of any DNA testing. A court is not statutorily permitted to conflate the two phases.

To the extent that the trial court found that the blood samples, for purposes of DNA testing, are immaterial under § 16(4)(a), given the blood-type evidence submitted to the jury at trial, the trial court also erred. We initially conclude that the materiality of the blood samples to the issue of identity is not affected or lessened by the fact that blood-type evidence excluding defendant as a donor was already presented at trial; all of this scientific evidence is material or relevant to defendant's identity as the perpetrator. Rather, the somewhat cumulative nature of the evidence may possibly play a role in deciding a future motion for new trial. Furthermore, if accurately tested, the blood identified as being consistent with the victim's blood type may or may not have been his blood, considering that other people have type O blood, and it was not defendant's blood, leaving open the possibility that another individual was involved in the crime. The blood identified as being inconsistent with both the victim and defendant's blood type, if accurately tested, also suggests the possibility that another individual was involved in the crime. Although it is true that both blood-type results and prospective DNA results might equally exclude defendant as being the donor of the blood samples found at the crime scene, the fact is that DNA evidence and blood-type evidence are not typically of equal value. In this case, we see a distinction between the jury knowing in a broad general sense that the blood of an unknown person was present at the crime scene and the jury potentially learning through DNA testing that the blood *of a particular person*, perhaps an acquaintance of the victim or a person who was in the bar that night, could be linked to the crime scene. Reasonable doubt would more likely flow from the identification of a specific individual, especially if the person was present in the area at the time of the murder, as opposed to a wholly unknown figure.[8] We cannot conclude that the blood samples, for purposes of DNA testing, are immaterial merely because the jury in the 1989 trial considered blood-type evidence that excluded defendant as a donor or source of the blood samples. DNA testing is justified because, under the circumstances, there exists prima facie

---

[8] We do appreciate that DNA testing might not produce the identity of the donor.

proof that the blood samples, which will be subjected to DNA testing, are material to defendant's identity as the perpetrator, where the DNA testing could point to another specific individual as the perpetrator.

Finally, as relied on by the trial court and prosecution, it is necessary to address a statement in *Barrera* indicating that "where . . . biological evidence has already excluded a defendant, identity is not an issue." *Barrera*, 278 Mich App at 740. To give the proper context to the statement, the full paragraph in which the statement is embedded must be examined:

> While MCL 770.16(3)(a) [now (4)(a)] requires a defendant to link DNA evidence sought to be tested to both the crime and the criminal in order to show materiality, MCL 770.16(3)(b) [now (4)(b)] addresses issues regarding the availability of the biological material, prior testing of the material, and whether identity was an issue at trial. MCL 770.16(3)(b)(*i*)-(*iii*) [now (4)(b)(*i*)-(*iii*)]. By way of example, if semen found on panties was material because the victim wore the panties at the time of the rape, MCL 770.16(3)(a) would be satisfied, but if a defendant had claimed at trial that he had consensual sex with the victim, identity would not be at issue. If identity is not at issue, then MCL 770.16(3)(b)(*iii*) is not satisfied, and DNA testing would not be ordered. Similarly, when a defendant's theory of the case is self-defense *or where the biological evidence has already excluded a defendant, identity is not an issue*. Although a defendant may satisfy the materiality requirement of MCL 770.16(3)(a), a defendant would not satisfy the "clear and convincing evidence" requirement of MCL 770.16(3)(b) on the issue of identity. [*Barrera*, 278 Mich App at 740 (emphasis added).]

As gleaned from this passage, the emphasized statement at issue, which is indisputably dicta and unconfined by specific facts, was being discussed in the context of § 16(3)(b)(*iii*), now § 16(4)(b)(*iii*), and not the materiality provision in § 16(4)(a) that we have been discussing at length in this opinion. MCL 770.16(4)(b)(*iii*) requires clear and convincing evidence that "[t]he identity of the defendant as the perpetrator of the crime was at issue during his or her trial." Accordingly, in the examples given by this Court – consensual sex, self-defense, and the existence of exclusionary evidence – the underlying implicit premise was that identity was not at issue or disputed by the parties at trial. Therefore, with respect to the hypothetical scenario where the biological evidence had already excluded a defendant, the *Barrera* panel was necessarily envisioning circumstances where there was exclusionary evidence *and in light of this evidence the parties did not dispute identity*. Such was not the case here, considering that the whole trial focused on the disputed issue of the identity of the perpetrator, alleged by the prosecutor to be defendant, notwithstanding the blood-type evidence excluding defendant as a source of the blood. The *Barrera* dicta has no bearing on our analysis.

Reversed and remanded for entry of an order directing DNA testing pursuant to MCL 770.16(6). We do not retain jurisdiction.

/s/ William B. Murphy
/s/ David H. Sawyer
/s/ Michael J. Talbot

-9-