# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

JASON DARWIN YOUNGS, SR.,

      Defendant-Appellant.

UNPUBLISHED
January 31, 2017

No. 328969
Shiawassee Circuit Court
LC No. 14-006764-FH

---

Before: M. J. KELLY, P.J., and STEPHENS and O'BRIEN, JJ.

PER CURIAM.

Defendant Jason Youngs Sr. appeals as of right his jury convictions of first-degree home invasion, MCL 750.110a(2), and unarmed robbery, MCL 750.530.[1] The trial court sentenced Youngs as a fourth-offense habitual offender, MCL 769.12, to prison terms of 200 to 500 months for the home invasion conviction and 140 to 500 months for the unarmed robbery conviction, to be served consecutively. Because there are no errors warranting relief, we affirm.

## I. BASIC FACTS

The jury convicted Youngs of breaking into the home of Robert Lacina in Ovid, Michigan, on October 27, 2014, and then assaulting Lacina when Lacina returned to the home while Youngs was still there. The prosecutor's theory at trial was that Youngs planned the offense with Jamie Rummell, who was Youngs's ex-wife or girlfriend and Lacina's employee.

Rummell testified at trial pursuant to a plea agreement. She stated that she and Youngs planned for Youngs to break into Lacina's house and steal his property while she accompanied Lacina on a trip to AuGres, Michigan to winterize a trailer there. While Rummell and Lacina were gone, Rummell sent text messages to Youngs informing him of their location and expected return. Evidence suggested that Youngs may not have received Rummell's text messages because he had turned off his cell phone to prevent it from being linked to the vicinity of Lacina's home at the time of the offense. When Lacina and Rummell arrived at Lacina's house,

---

[1] The jury acquitted Youngs of an additional count of breaking and entering a building, MCL 750.110.

-1-

Rummell saw Youngs's truck still in the driveway. Lacina began to enter his house, but was assaulted by a person who was inside. According to Lacina, the assailant repeatedly hit him, knocked him down, and then kicked him in the face and head. Lacina's teeth were broken during the assault. The assailant then entered the red truck in the driveway and drove away.

After the intruder left, Lacina discovered that a door to his home had been ripped off its frame and his bedroom had been ransacked. In addition, a safe that had been hidden was on the floor and had been opened. Lacina did not notice anything missing, but at Rummell's suggestion he initially told the police that $5,000 had been taken from his house. Lacina later admitted to the police that nothing had been stolen.

After the offense, the police attempted to locate Youngs through his parole officer, Brian Stevens. When Youngs subsequently met with Stevens, Youngs uncharacteristically was not carrying his cell phone and said that he had left it at a job site. Additionally, Youngs was not driving his red truck and said it had broken down. Stevens provided Youngs with the contact information for the detective who wanted to speak to him. Youngs said he would call the detective, but never did. Youngs was later arrested and incarcerated for absconding from his parole. While in jail, he was incarcerated with Lakendrik Willis. At trial, Willis testified that Youngs admitted his involvement in the break-in and assault at Lacina's house. Willis provided detailed information about the offense and Youngs's efforts to avoid detection, which he claimed he learned from Youngs.

At trial, Youngs's lawyer suggested that Lacina collaborated with Rummell to plan the home invasion and commit insurance fraud and that, with Willis's help, the two were now attempting to place the blame on Youngs to get themselves out of trouble. As noted above, the jury found Youngs guilty of first-degree home invasion and armed robbery.

## II. YOUNGS'S PAROLE STATUS

### A. STANDARD OF REVIEW

Youngs first argues that he was denied a fair trial by the injection of testimony that he was on parole at the time of the offenses. There was no objection to this testimony at trial, so the issue is unpreserved and our review is limited to plain error affecting Youngs's substantial rights. *People v Benton,* 294 Mich App 191, 202; 817 NW2d 599 (2011). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, and 3) the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*.

### B. ANALYSIS

"A defendant's opportunity for a fair trial can be jeopardized when the prosecutor interjects issues broader than the defendant's guilt or innocence." *People v Dobek*, 274 Mich App 58, 63-64; 732 NW2d 546 (2007). Youngs argues that the evidence of his parole status and prior incarceration should have been excluded under MRE 403, which provides that evidence, although relevant, may be excluded if its probative value is substantially outweighed by the

danger of unfair prejudice. Evidence of a prior conviction is generally regarded as being prejudicial to the accused because there is a danger that the jury "will misuse prior conviction evidence by focusing on the defendant's general bad character . . . ." *People v Allen*, 429 Mich 558, 569; 420 NW2d 499 (1988). However, reference to a defendant's parole status is not improper when it is relevant for something other than propensity. See *People v Coffey*, 153 Mich App 311, 313; 395 NW2d 250 (1986), overruled in part on other grounds in *People v Hernandez-Garcia*, 477 Mich 1039; 728 NW2d 406 (2007). In addition, because a jury is presumed to follow its instructions, a cautionary instruction can alleviate possible prejudice to the defendant. See *People v Waclawski*, 286 Mich App 634, 710; 780 NW2d 321 (2009).

The police believed that Youngs could be linked to the offense through his truck and his cell phone. The testimony concerning Youngs's post-offense interactions with his parole officer, Brian Stevens, was probative of Youngs's identity as the individual who broke into Lacina's home and assaulted him. Evidence supporting a finding that the defendant was the person who committed a charged offense is clearly relevant. See *People v Hall*, 433 Mich 573, 582; 447 NW2d 580 (1989); *People v Poole (On Remand)*, 311 Mich App 296, 311; 874 NW2d 407 (2015). Stevens testified that, after the offense, he received a request from a police detective for assistance in locating Youngs's cell phone and truck. The parole officer's testimony concerning Youngs's stated reasons for his inability to produce his cell phone or truck upon request was compared to and contradicted by the police detective's testimony concerning the truck, as well as Willis's testimony that Youngs told him that he had actually given his truck to a friend or relative, tried to obtain a fake title, changed the truck tires and floor mats, and wiped it down with bleach in an attempt to remove incriminating evidence. Testimony concerning Youngs's absconding was also relevant because evidence of flight may indicate consciousness of guilt. *People v Coleman*, 210 Mich App 1, 4; 532 NW2d 885 (1995). Evidence that Youngs lied to Stevens about why he did not have either his cell phone or his truck was relevant to his consciousness of guilt, and was relevant to the credibility of Willis's testimony about Youngs's alleged confession to him. Stevens's status as Youngs's parole officer was central to his testimony because it showed (1) why the police contacted him, (2) how Stevens directed Youngs to speak with the officers, (3) how he found Youngs's behavior odd compared to their earlier meetings, and (4) why Stevens was concerned about Youngs's whereabouts such that he determined that Youngs had absconded. We agree with the prosecutor that it would have been virtually impossible to determine the import of Stevens's testimony without mentioning the basis for Stevens's relationship with Youngs, and thus Youngs's parole status. Moreover, the trial court provided a cautionary instruction advising the jury on the limited, permissible use of this evidence. In sum, because Stevens's testimony was relevant for a proper purpose, and because the trial court's cautionary instruction minimized any potential for unfair prejudice, the testimony did not constitute plain error.

Youngs observes that references to his prior incarceration were made during questioning of other witnesses, including Willis, Rummell, and Rummell's daughter. We agree with Youngs that these references were not relevant or necessary to the matters being explored during questioning. However, because the jury was already aware of Youngs's prior incarceration and parole status, this additional testimony did not affect his substantial rights (i.e., it did not affect the outcome of trial). *Carines*, 460 Mich at 763.

In a related argument, Youngs argues that his trial lawyer was ineffective for failing to object to the introduction of the testimony concerning his parole status and prior incarceration. Because Youngs did not raise an ineffective assistance claim in a motion for a new trial or request for an evidentiary hearing, our review of this issue is limited to errors apparent from the record. *People v Snider*, 239 Mich App 393, 423; 608 NW2d 502 (2000). To establish ineffective assistance of counsel, Youngs must show that: (1) his lawyer's representation "fell below an objective standard of reasonableness"; and (2) but for his lawyer's deficient performance, there is a reasonable probability that the outcome of the proceeding would have been different. *People v Vaughn*, 491 Mich 642, 669; 821 NW2d 288 (2012), citing *Strickland v Washington*, 466 US 668, 688-694; 104 S Ct 2052; 80 L Ed 2d 674 (1984). Youngs must also "overcome the strong presumption that counsel's performance was born from a sound trial strategy." *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). "Because the defendant bears the burden of demonstrating both deficient performance and prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim." *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001).

A trial lawyer is not ineffective for failing to make a meritless objection. *People v Goodin*, 257 Mich App 425, 433; 668 NW2d 392 (2003). As previously discussed, Stevens's testimony was admissible for a proper purpose and was not unfairly prejudicial. Therefore, Youngs's lawyer was not ineffective for failing to object to this testimony. Further, to the extent that an objection to the references to Youngs's criminal history by other witnesses would have been appropriate, Youngs was not prejudiced by his lawyer's failure to object because the jury was already exposed to this information through Stevens's admissible testimony, and the trial court instructed the jury that it could not consider evidence of Youngs's prior incarceration for the purpose of determining his guilt on the charged offenses. Accordingly, Youngs's ineffective assistance claim is without merit.

## III. INSTRUCTIONAL ERROR

### A. STANDARD OF REVIEW

Youngs next raises two claims of instructional error. He argues that the trial court erred (1) by failing to instruct the jury on mistake-of-fact as a defense to the home invasion and unarmed robbery charges, and (2) by failing to give a special cautionary instruction on how to consider accomplice testimony with respect to Lacina's testimony. Neither instruction was requested at trial. More significantly, Youngs's lawyer affirmatively expressed agreement with the instructions given. The affirmative approval of the trial court's jury instructions waived any claim of instructional error. *People v Riley*, 465 Mich 442, 449; 636 NW2d 514 (2001); *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000). A waiver extinguishes any error, leaving no error to review. *Riley*, 465 Mich at 449. However, Youngs additionally argues that his lawyer was ineffective for failing to request the instructions at issue. Therefore, we consider Youngs's claims of instructional error in that context.

B. ANALYSIS

A trial court is not required to instruct the jury on a theory of defense unless the instruction is supported by the evidence. *People v Riddle*, 467 Mich 116, 124; 649 NW2d 30 (2002). Youngs argues that his lawyer was ineffective for not requesting a "mistake-of-fact" instruction concerning whether Youngs mistakenly believed that Lacina had consented to the breaking and entering as part of Lacina's plan to commit insurance fraud. We disagree.

The defense of mistake-of-fact requires, in part, that the mistake relate to facts and not the law, and that the mistake be honest and reasonable. 21 Am Jur 2d, Criminal Law, § 152, pp 232-233. " 'A mere belief, unsupported by a showing of due care and bona fide, reasonable effort to ascertain the facts, is insufficient to constitute a mistake of fact defense.' " *People v Quinn*, 440 Mich 178, 196; 487 NW2d 194 (1992), quoting *People v Dillard*, 154 Cal App 3d 261, 266; 201 Cal Rptr 136 (1984). In this case, the evidence did not support a finding that Youngs acted in a mistaken manner. Rummell testified that she gave Youngs the impression that Lacina was aware of their plans and that Lacina intended to make a false insurance claim. However, no evidence was presented showing that Youngs actually believed Rummell or that he acted with due care in determining whether the assertion was true. Instead, the evidence established that Youngs tried to keep Lacina from returning home, then assaulted him when he arrived at the home while Youngs was still there. Thus, the evidence supports the inference that Youngs did not believe that Lacina knew about Rummell's plan or was involved in it, and is inconsistent with any alleged belief by Youngs that Lacina was aware of the planned break-in. Because a mistake-of-fact defense was not available to Youngs on the basis of the evidence presented, his lawyer was not ineffective for failing to request a jury instruction on that defense. *People v Gonzalez*, 468 Mich 636, 645; 664 NW2d 159 (2003).

Youngs also argues that his lawyer was ineffective for not requesting a disputed accomplice instruction, M Crim JI 5.5, to be given along with M Crim JI 5.6, with respect to Lacina's testimony. These instructions would have required the jury to decide whether Lacina was an accomplice to the offenses, and if so, to consider his testimony closely and with careful scrutiny.[2]

As defined by M Crim JI 5.5, an "accomplice" must "knowingly and willingly help[ ] or cooperate [ ]" in the commission of the crime. While testimony was presented that Lacina considered taking advantage of the crimes by falsely claiming after the offenses that $5,000 had been stolen, no evidence supported a finding that Lacina played a role in the commission of the offenses or had prior knowledge that the offenses would be committed. Although Rummell testified that she told Youngs that Lacina wanted the break-in to occur, she repeatedly stated that this was a lie and that Lacina played no part in planning the break-in. Willis also testified that nothing Youngs told him indicated that Lacina was involved in the break-in. Nor did any testimony support an accomplice instruction concerning Youngs's assault on Lacina. Although Youngs points to inaccuracies in Lacina's testimony concerning the details of the type of truck

---

[2] We note that the trial court instructed the jury pursuant to M Crim JI 5.6 with respect to Rummell's testimony.

driven by his assailant and his assailant's height, these inaccuracies do not establish support for a disputed accomplice instruction. Moreover, Youngs ignores the import of the fact that Lacina was severely assaulted when he returned to his house. The severity of the assault against Lacina is completely at odds with any notion that Lacina was a party to the planned break-in. Accordingly, the evidence did not support a separate accomplice instruction with respect to Lacina, and therefore, Youngs was not prejudiced by his lawyer's failure to request the instruction.

## IV. PLEA PROCEEDINGS

### A. STANDARD OF REVIEW

Youngs argues that the trial court erred when, in considering Youngs's request for a new lawyer, the court required him to choose between accepting a pending plea offer with his current lawyer or proceeding to trial with a new lawyer. Although Youngs now argues that the trial court violated his right to counsel by not giving him the opportunity to consult with a new lawyer about whether to accept or reject the plea offer, Youngs never objected on this basis below. Therefore, this issue is unpreserved. *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007). Accordingly, we review the issue for plain error affecting Youngs's substantial rights. *Benton,* 294 Mich App at 202.

### B. ANALYSIS

We disagree with Youngs's claim that by requiring him to decide whether to accept or reject the plea offer before appointing a new lawyer, the trial court effectively denied him the representation of a lawyer at the "critical juncture" of determining whether to accept or reject the plea offer. Although Youngs's then appointed lawyer expressed his reluctance to proceed if Youngs was displeased with him, he repeatedly stated that he was willing to continue as Youngs's lawyer and was prepared for trial. He also continued to represent Youngs until Youngs made his choice whether to accept or reject the plea offer. Additionally, in conjunction with the trial court, Youngs's original lawyer advised Youngs of the terms of the plea offer, including the benefits of the offer compared to the risks of proceeding to trial. In particular, Youngs was informed that the plea offer would entitle him to be sentenced within a defined sentence range and receive concurrent sentences, whereas if he was convicted at trial he would likely be subject to a higher sentencing guidelines range and would be subject to consecutive sentencing. Youngs, therefore, was not without a lawyer at the time he was required to accept or reject the plea offer.

Moreover, Youngs has not shown, or even argued, that a new lawyer could have provided any additional information or advice about the proposed plea offer that his then existing lawyer had not already provided. Although Youngs argued during trial that his former lawyer had not communicated with him concerning discovery, Youngs never made this complaint about his lawyer during any of the plea discussions. The record of the plea discussions reflects that there were extensive discussions about the possible risks if Youngs were to forgo the plea agreement, and the benefits of the plea offer, such as not having to worry about the possibility of serving consecutive sentences and a reduction of the sentencing guidelines range. In addition, Youngs has not provided any evidence that a new lawyer would have reasonably been likely to obtain a

more favorable plea offer. We note that both the trial court and the prosecutor had repeatedly rejected Youngs's attempts to renegotiate the plea to provide for a hard sentencing cap. Moreover, the trial court had expressed its unwillingness to consider additional plea offers because the normal time for accepting a plea agreement had already expired at the time of the plea discussions.

In light of all of these reasons, Youngs has failed to establish a plain error affecting his substantial rights with respect to this issue.

## V. SENTENCING

### A. CONSECUTIVE SENTENCES

Youngs next argues that the trial court erred in imposing consecutive sentences. We disagree. The trial court was authorized to impose consecutive sentences pursuant to MCL 750.110a(8), which provides that "[t]he court may order a term of imprisonment imposed for home invasion in the first degree to be served consecutively to any term of imprisonment imposed for any other criminal offense arising from the same transaction." We review the trial court's decision whether to impose consecutive sentences for an abuse of discretion. *People v Norfleet*, ___ Mich ___; ___ NW2d ___ (2016) (Docket No. 328968); slip op p 1, lv pending.

Our Supreme Court has stated that Michigan has a "clear preference for concurrent sentencing" and that the imposition of consecutive sentence is the exception rather than the norm. *People v Chambers*, 430 Mich 217, 229; 421 NW2d 903 (1988). "The purpose of consecutive sentencing is to enhance the punishment imposed upon those who have been found guilty of more serious crimes and who repeatedly engage in criminal acts." *Id.* (citation and emphasis omitted). As the Court observed in *Chambers*:

> The imposition of a consecutive sentence is strong medicine. It may well be warranted in some cases. But it should be used only after awareness of a sentence already imposed so that the punitive effect of the consecutive sentence is carefully considered at the time of its imposition. [*Id.* at 231 (citation and alteration omitted).]

The record does not support Youngs's argument that the trial court improperly imposed consecutive sentences as punishment for his decision to reject the prosecution's plea offer. The trial court and Youngs did discuss the possibility of consecutive sentencing during the plea discussions. At one point, Youngs stated that he did not feel that he was getting a good enough offer, in part because he felt it was unlikely that the trial court would impose consecutive sentences. The trial court informed Youngs that if he did not think the court would consider consecutive sentencing, he "better think again." When Youngs later stated that he felt that the trial court was coercing him to accept the plea offer, the court clarified that it wanted to be "perfectly clear" that it was not stating what Youngs's sentence would be, but it wanted to make sure that Youngs knew that consecutive sentencing was a possibility. Viewed in context, it is clear that the trial court's statements were not intended as a threat to punish Youngs with consecutive sentencing if he was convicted at trial, but rather were an attempt to make sure that Youngs was aware of all of the consequences of accepting or rejecting the plea offer, including

the possibility of consecutive sentencing if he was convicted at trial, so that his decision whether to accept or reject the plea offer would be knowingly and understandingly made.

Youngs also argues that the trial court erroneously ordered consecutive sentences because all of the information the court considered in determining whether to impose consecutive sentences was already taken into account in the scoring of the guidelines. We disagree. In explaining its decision to impose consecutive sentences, the trial court focused on Youngs's recidivism, including the fact that the 40-year-old defendant had begun his criminal career at age 17, had repeatedly reoffended, including more than once almost immediately after being discharged from parole, and was on parole at the time he committed the instant offenses. The presentence investigation report discloses that the instant convictions are Youngs's eleventh and twelfth felony convictions, spanning a 22-year period dating back to 1992. Youngs also has an extensive juvenile criminal history. Several of his prior convictions involve serious felonies such as home invasion, breaking and entering, attempted escape, and resisting or obstructing. Although Youngs's criminal history and status as a fourth-offense habitual offender would have been taken into account in the scoring of the sentencing guidelines, the guidelines are intended only to provide an appropriate sentence range for an individual sentence; they have no applicability in determining whether multiple sentences should be imposed concurrently or consecutively. Considering Youngs's lengthy and almost uninterrupted criminal history, coupled with the fact that he was again on parole when he committed the instant offenses, the trial court's decision to impose consecutive sentences is within the range of reasonable and principled outcomes, and therefore, does not constitute an abuse of discretion.

## B. JUDICIAL FACT-FINDING

Youngs also argues that he is entitled to sentencing relief under *People v Lockridge*, 498 Mich 358, 364; 870 NW2d 502 (2015), in which our Supreme Court held that Michigan's sentencing guidelines are unconstitutional to the extent that they "require judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables (OVs) that mandatorily increase the floor of the guidelines minimum sentence range . . . ." (Emphasis omitted). To remedy this violation, the Court severed MCL 769.34(2) to the extent that it makes a sentencing guidelines range based on judge-found facts mandatory, and held that a guidelines range calculated on the basis of judicial fact-finding is advisory only. *Id.* at 364-365. Youngs argues that, in accordance with *Lockridge*, 498 Mich at 395-396, he is entitled to a *Crosby*[3] remand for further consideration of his sentences because the trial court's scores for OVs 3, 10, and 12 of the sentencing guidelines were all based on judicial fact-finding.[4]

---

[3] *United States v Crosby*, 397 F 3d 103 (CA 2, 2005).

[4] To the extent Youngs also argues that the trial court's five-point score for OV 12 was not supported by a preponderance of the evidence, we decline to consider his argument because his trial lawyer affirmatively agreed to the scoring of OV 12 at sentencing, thereby waiving any error. *Riley*, 465 Mich at 449. Moreover, even if OV 12 was erroneously scored, Youngs would not be entitled to relief because the five-point score does not affect his sentencing guidelines range. *People v Francisco*, 474 Mich 82, 89 n 8; 711 NW2d 44 (2006).

However, Youngs was sentenced on August 7, 2015, which was after *Lockridge* was decided. In *Lockridge*, the Supreme Court stated that "*Crosby* remands are warranted only in cases involving sentences imposed on or before July 29, 2015, the date of today's decision." *Id.* at 397. He is therefore not entitled to a *Crosby* remand. Furthermore, he has not demonstrated that the trial court sentenced him in a manner inconsistent with *Lockridge*. Although sentencing occurred shortly after our Supreme Court decided *Lockridge*, the trial court is presumed to have been aware of *Lockridge* when it sentenced Youngs. See *People v Alexander*, 234 Mich App 665, 675; 599 NW2d 749 (1999). The sentencing transcript does not contain any statement by the trial court reflecting an understanding that it was mandatorily required to sentence Youngs within the sentencing guidelines range. Accordingly, Youngs has not overcome the presumption that the trial court sentenced him in accordance with the law as prescribed in *Lockridge*.

## VI. YOUNGS'S STANDARD 4 BRIEF

Youngs raises additional issues in a pro se brief filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4, none of which have merit.

## A. PROSECUTORIAL MISCONDUCT

Youngs argues that the prosecutor engaged in pervasive misconduct that denied him a fair trial. There was no objection to the prosecutor's conduct at trial, so these claims unpreserved. *Metamora Water Serv, Inc*, 276 Mich App at 382. We review unpreserved claims of prosecutorial misconduct for plain error affecting Youngs's substantial rights. *Carines*, 460 Mich at 763-764.

Youngs first argues that the prosecutor committed misconduct by permitting Willis to falsely testify that he did not receive any information about the break-in from either his girlfriend, Tawny Felzke, or her brother, Jerry Felzke, and by then misleading the jury into believing that Willis's knowledge of the offense came solely from Youngs. It is a violation of due process for the prosecutor to knowingly use false testimony to obtain a conviction or to allow testimony that the prosecutor knows is false to stand uncorrected. *People v Herndon*, 246 Mich App 371, 417; 633 NW2d 376 (2001). However, it is not apparent from the record that Willis committed perjury. The prosecutor elicited that Willis had spoken to Tawny Felzke about Youngs, but Willis denied that Tawny provided him with the detailed information that he provided at trial. Nothing in the record indicates that this testimony was false. The case report on which Youngs relies indicates that Tawny Felzke may have provided Willis with some general information about what Youngs told her brother. However, Willis testified about a number of details not mentioned in the case report, including Youngs's interaction with his parole officer, Youngs's lies to the officer, what Youngs had done to his truck and cell phone, his actions in trying to remove incriminating evidence, and information about the agreement with Rummell to try to convince Lacina to falsely claim that $5,000 had been stolen. The prosecutor, and even Youngs's lawyer, could have asked more follow-up questions to allow the jury to determine what specific information Tawny Felzke may have actually provided to Willis. However, the prosecutor's failure to further inquire into testimony that has not been proven to be false does not constitute misconduct. Accordingly, because the record does not clearly establish that Willis lied about obtaining his knowledge of the offense from Youngs, we reject this claim of error.

We also reject Youngs's claims that his constitutional right of confrontation was violated by the admission of hearsay statements from Tawny and Jerry Felzke. Although evidence indicated that Youngs may have spoken to Jerry Felzke, that Jerry may have spoken to Tawny, and that Tawny spoke to Willis, the record does not disclose that any actual statements by Tawny or Jerry Felzke were presented to the jury.

Youngs also argues that the prosecutor acted improperly by seeking to introduce evidence and testimony, and providing commentary during closing argument, designed to evoke the jury's sympathy concerning the extent of Lacina's injuries. "Appeals to the jury to sympathize with the victim constitute improper argument." *People v Watson*, 245 Mich App 572, 591; 629 NW2d 411 (2001). However, a prosecutor's good-faith effort to admit evidence does not constitute misconduct. *People v Noble*, 238 Mich App 647, 660-661, 608 NW2d 123 (1999). In addition, "[p]rosecutors have discretion on how to argue the facts and reasonable inferences arising therefrom, and are not limited to presenting their arguments in the blandest terms possible." *People v Meissner*, 294 Mich App 438, 456; 812 NW2d 37 (2011).

Youngs complains about testimony from Lacina and other witnesses, and the use of photographs, explaining and depicting the extent of Lacina's injuries sustained during his assault. In arguing that the presentation of this evidence constituted misconduct, Youngs conflates statements by a prosecutor designed solely to engender improper sympathy for a victim with evidence tending to prove guilt. Youngs presents no support for his position that the prosecution was only permitted to present its weakest evidence, or the minimum necessary to support a conviction. On the contrary, it is well established that photographic evidence is not inadmissible solely because it displays vivid or graphic imagery. See *People v Ho*, 231 Mich App 178, 188; 585 NW2d 357 (1998).

With respect to the testimony concerning the characterization of Lacina's injuries and the supporting photographic evidence, Youngs incorrectly asserts that this evidence served no purpose other than to inflame the jury. He concedes that evidence that Lacina was attacked was relevant to the prosecutor's burden of proving an underlying assault, which is an essential element of robbery, which in turn was used to support the home invasion conviction. In addition, the evidence concerning the extensive beating that Lacina received was relevant to refute the defense suggestion that Lacina was involved in planning the home invasion. Because it is not misconduct for the prosecutor to attempt to admit evidence in good faith, *Noble*, 238 Mich App at 660-661, and because the evidence was relevant to both establishing a necessary element of the charged crimes and to refuting any suggestion that Lacina was somehow involved in the planned break-in, Youngs has not shown that the prosecutor offered this evidence for the improper purpose of inflaming or arousing the passions or prejudices of the jurors. Further, the prosecutor's remarks during closing argument were proper comments on the testimony and evidence presented at trial, not improper solicitations of sympathy. *Meissner*, 294 Mich App at 456.

Finally, we agree that the prosecutor's remarks describing Lacina as a "patsy" could be viewed as intending to generate sympathy for Lacina. However, they also explained why Lacina would be susceptible to being influenced by Rummell, who asked Lacina to falsely report the theft of $5,000. Regardless, considering that the remarks were isolated, did not blatantly appeal

to the jury's sympathy, and were not particularly inflammatory, they do not rise to the level of plain error affecting Youngs's substantial rights. *Watson*, 245 Mich App at 591.

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

Youngs's asserts that his trial lawyer was ineffective for failing to object to the prosecutor's conduct discussed above. Having concluded that the prosecutor's conduct was not improper, it follows that his trial lawyer was not ineffective for failing to object. *Goodin*, 257 Mich App at 433. To the extent that an objection might have been appropriate with respect to the "patsy" comments, because Youngs was not prejudiced by those isolated remarks, he cannot demonstrate a reasonable probability that, but for his lawyer's failure to object, the outcome of the proceeding would have been different.

Youngs also argues that his trial lawyer was ineffective for telling the jury during opening statement that Youngs would testify, and then frightening Youngs into not testifying during trial by "ominously" warning him that the prosecution would possibly "[tear] him to shreds, making him out to be a monster, and eliciting all sorts of horrible things." We disagree.

A criminal defendant has a fundamental constitutional right to testify at trial. US Const, Am XIV; Const 1963, art 1, §§ 17, 20. The decision to testify or not to testify is a strategic one "best left to an accused and his counsel." *People v Martin*, 150 Mich App 630, 640; 389 NW2d 713 (1986). "Although counsel must advise a defendant of this right, the ultimate decision whether to testify at trial remains with the defendant." *People v Bonilla-Machado*, 489 Mich 412, 419; 803 NW2d 217 (2011). "If the accused expresses a wish to testify at trial, the trial court must grant the request, even over counsel's objection." *People v Simmons*, 140 Mich App 681, 685; 364 NW2d 783 (1985). "[I]f defendant . . . decides not to testify or acquiesces in his attorney's decision that he not testify, the right will be deemed waived." *Id.* (citation omitted).

There is no basis in the record for concluding that Youngs's lawyer deprived Youngs of his constitutional right to testify. The record contains no indication that Youngs expressed to his lawyer a desire to testify and that his lawyer somehow "forced" or "coerced" him into forgoing that right. On the contrary, after the prosecution rested, Youngs's lawyer stated on the record that he and Youngs had discussed whether Youngs would testify, that Youngs was advised of his right to testify or not testify and the possible consequences of testifying, that his lawyer had "left the final decision up to" Youngs, and that Youngs had decided not to testify. The court also questioned Youngs as to whether he had discussed this with his lawyer; Youngs replied that he had and stated that it was his decision not to testify. Youngs never expressed disagreement with his lawyer's statement that he did not wish to testify, did not claim that he was ignorant of his right to testify, and did not claim that his lawyer had coerced him into not testifying. Accordingly, the record does not support Youngs's claim that his lawyer was ineffective in this regard.

Finally, because Youngs has not demonstrated multiple errors by his trial lawyer, he cannot show that he is entitled to relief due to the cumulative effect of his lawyer's deficient conduct. See *People v Gaines*, 306 Mich App 289, 310; 856 NW2d 222 (2014) ("[O]nly 'actual errors' are aggregated when reviewing a cumulative-error argument.").

Affirmed.

/s/ Michael J. Kelly
/s/ Cynthia Diane Stephens
/s/ Colleen A. O'Brien